## INTERNATIONAL PAPER COMPANY, Plaintiff,

v.

## INHABITANTS OF THE TOWN OF JAY, et al., Defendants.

### Civ. 88–0183–P.

United States District Court, D. Maine.

April 27, 1990.

See also 672 F.Supp. 29.

William J. Kayatta, Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, Me., for plaintiff.

Gerald F. Petruccelli, Portland, Me., Theodore E. Dinsmoor, Gaston & Snow, Boston, Mass., for defendants.

## MEMORANDUM OF DECISION

GENE CARTER, Chief Judge.

Plaintiff filed this suit seeking to invalidate and enjoin enforcement of the Jay Environmental Control and Improvement Ordinance (Ordinance). Plaintiff contends that the Ordinance: (I) is preempted under the National Labor Relations Act; (II) violates the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution; and (III) violates the Maine conflict of interest statute, 30 M.R.S.A. § 2251.[1] Defendants have filed a Motion for Judgment on the Pleadings on all counts. Plaintiff

---

1. Plaintiff's amended complaint also included Counts IV–IX. Plaintiff states that it will no longer pursue either Count VII or IX, and thus they will be dismissed. Counts IV, V, and VI are addressed in the Order issued concurrently with this opinion and will not be discussed herein.

objected to Defendants' motion and filed a Cross–Motion for Partial Judgment on the Pleadings on Counts IV through IX. Defendant subsequently filed a Motion to Dismiss for Mootness to which Plaintiff has objected.[2]

## BACKGROUND

Plaintiff makes the following allegations in its Amended Complaint. On June 16, 1987, approximately 1,200 workers who were employed at Plaintiff's plant in Jay, Maine, went on strike. In response, Plaintiff hired replacement workers. The percentage of town voters who were on strike or who have spouses or family members on strike is sufficiently great so that the group can control town policy. The town's legal counsel, at the behest of selectmen who were in the striking union, drafted the Jay Environmental Control and Improvement Ordinance, and the town selectmen proposed that it be voted on by the people of Jay. On May 21, 1988, after two public hearings, the town enacted the Ordinance by a referendum vote.

Plaintiff further alleges that the selectmen supported and proposed the Ordinance for their own pecuniary purposes and in order to punish Plaintiff. In particular, Plaintiff alleges that the selectmen hoped to pressure Plaintiff into submitting to worker demands, thereby ending the strike and putting extra money in the pockets of certain selectmen or their spouses. Plaintiff also alleges that the town as a whole, as well as the other Defendants, was similarly motivated.

2. The Court denies Defendants Motion to Dismiss for Mootness as it pertains to Counts I, II, and III of Plaintiff's Amended Complaint because the Ordinance is still in place and because the voters' decision not to repeal the Ordinance could not vitiate an unconstitutional infirmity arising from enactment.

The Court, however, maintains under advisement Defendants' mootness motion as it relates to Counts IV, V, and VI. As Plaintiff agrees, Count VIII of the Amended Complaint is moot and will thus be dismissed.

3. The Court finds no support for the proposition that the judiciary may assess, for the purposes of invalidating a law, the motives of the general public that voted for the law. The constitutionality of a statute stands on its own; a vote by

After the strike was resolved, and after this suit was commenced, a referendum to repeal the environmental Ordinance was put to the voters of Jay. The town voted not to repeal the Ordinance. Defendants' Motion to Dismiss for Mootness is based on this second vote.

## DISCUSSION

■ Counts I, II, and III of Plaintiff's Amended Complaint rest on Plaintiff's assertions of improper motive. For the purposes of Defendants' Motion for Judgment on the Pleadings, the Court must take the factual allegations contained in Plaintiff's Amended Complaint as true and must assess Plaintiff's legal claims in the light most favorable to Plaintiff. *Lovell v. One Bancorp*, 690 F.Supp. 1090, 1096 (D.Me. 1988). To grant judgment on the pleadings, the Court must be certain that the nonmoving party is not entitled to relief under any set of facts that could be proved in support of its claim. *Id.*

■ Counts I, II, and III of the Amended Complaint focus solely on the actions taken by the town's selectmen. Plaintiff does not appear to argue, nor does the Court find support for, the proposition that the Court may invalidate an ordinance *because* the general public who voted for the Ordinance did so for improper reasons.[3] Plaintiff argues, and the Court concludes, therefore, that Counts I, II, and III assert that the Court ought to strike down the Ordinance because of the selectmen's actions in helping to pass the Ordinance.[4]

the general public cannot make constitutional an unconstitutional law that infringes upon a fundamental right, contains a suspect classification, or impacts upon a suspect class. *See City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432, 448, 105 S.Ct. 3249, 3258, 87 L.Ed.2d 313 (1985) (court will analyze a statute to determine if it violates the equal protection clause regardless of whether the law at issue has been voted on by the public).

4. The Court concludes that Plaintiff is not asserting that the town itself acted unconstitutionally or illegally by voting for the Ordinance. *See, supra* n. 2. Furthermore, because Plaintiff has not alleged that the town manager or the code enforcement officer had any special role in

It is, therefore, important to define the selectmen's role in passing the Ordinance. Plaintiff states that the selectmen directed the town attorney to draft environmental legislation in order to harm Plaintiff. After a public hearing on the proposed Ordinance, the selectmen moved to have the Ordinance put to a referendum vote. The motion was made and seconded by selectmen, who were members of the striking union. Subsequent to that motion, and prior to the referendum, there was another public hearing on the proposed Ordinance. On May 21, 1988, the voters of the town of Jay voted to enact the Ordinance. Later, after the union had called off the strike, the town voted not to repeal the Ordinance.

The Court, while viewing the facts provided in Plaintiff's Amended Complaint as true, notes that the selectmen did *not* pass the law. Their role, although important, was limited to commissioning the drafting of the Ordinance and proposing the Ordinance. Counts I, II, and III, therefore, seek to invalidate the Ordinance solely based on the selectmen's role in drafting and proposing the Ordinance and must be viewed in that context. Thus, at issue is an Ordinance which facially protects the health and welfare of the town's citizens and which was put to a general vote on two occasions.

### Constitutional Claims

■ In Count II of its Amended Complaint, Plaintiff maintains, pursuant to 42 U.S.C. § 1983, that Defendants, acting under color of state law, have deprived Plaintiff of its equal protection and due process rights guaranteed by the Fourteenth Amendment to the United States Constitution. For the reasons set out below, the Court finds that the Ordinance is rationally related to legitimate municipal ends and, therefore, is not constitutionally infirm.

■ The proper deference owed to the democratic process requires courts to presume legislation is valid if its means are rationally related to a legitimate state in-

terest. *Cleburne v. Cleburne Living Center, Inc.* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). Courts must grant wide latitude when social or economic legislation is at issue. *Id.* This level of deference is inapplicable, however, when the legislation contains a suspect classification or when the legislation deprives individuals of fundamental rights. *Id.* (suspect classification requires strict scrutiny analysis); *Roe v. Wade,* 410 U.S. 113, 155, 93 S.Ct. 705, 727, 35 L.Ed.2d 147 (1973) (strict scrutiny applies to fundamental rights). Courts analyze with heightened scrutiny legislation that contains a suspect classification or that impinges on fundamental rights, requiring that the legislation provide the least restrictive means needed to support a compelling state interest. *See, e.g., Cleburne v. Cleburne Living Center, Inc.* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985); *Roe v. Wade,* 410 U.S. 113, 155, 93 S.Ct. 705, 727, 35 L.Ed.2d 147 (1973).

Plaintiff does not argue that the Jay Ordinance entails improper classifications or that Plaintiff is part of a suspect class. Nor does Plaintiff maintain that the Ordinance deprives it of any of the fundamental rights recognized by the Supreme Court. Thus, to determine the constitutionality of the Ordinance, the Court must either apply the rationality test or create a new fundamental right. Because the Court finds no grounds for the creation of such a new right in this suit, the Ordinance must be found valid if it is rationally related to a legitimate municipal or public end.

The Court finds that the Ordinance is clearly rational and that its means are logically related to a legitimate end. The Ordinance's stated purpose is to protect "the public health, safety and welfare of the inhabitants of the Town of Jay and for protecting and enhancing the Town of Jay's environment." Jay Environmental Control and Improvement Ordinance § 1–102. The Ordinance provides rules, regulations, and standards that do, indeed,

passing the Ordinance, other than as voting citizens, the Court finds that Plaintiff's arguments

are directed at the selectmen.

set about the business of protecting the town's environment. Plaintiff is not singled out. Plaintiff has not alleged that the means by which the Ordinance attempts to protect the environment violates its due process or equal protection rights. The Court holds that the Ordinance provides a rational means to protect the environment and, therefore, does not violate either Plaintiff's equal protection or due process rights.

Plaintiff argues, however, that the Court must strike down the Ordinance because of the illicit motives of the selectmen in commissioning the drafting of the Ordinance and proposing it. The Court holds that proper review of the Ordinance entails that the Court focus on the Ordinance itself. *United States v. O'Brien*, 391 U.S. 367, 383, 88 S.Ct. 1673, 1682, 20 L.Ed.2d 672 (1968); *Fraternal Order of Police Hobart Lodge No. 121 v. City of Hobart*, 864 F.2d 551 (7th Cir.1988). The Supreme Court in *O'Brien* noted that courts "will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive." *O'Brien*, 391 U.S. at 383, 88 S.Ct. at 1682. The Court limits the potential scope of analysis out of respect for the democratic political process and because of the inherent difficulty of determining the motives of a collective body. *Fraternal Order of Police Hobart Lodge No. 121*, 864 F.2d at 554.

Confining analysis to the Ordinance is particularly appropriate in this suit both because of the selectmen's nondecisive role in its enactment and because it was, in fact, enacted by a vote of the populace. The referendum, referred to as "the people's veto" in the Maine Constitution (Article IV, Part Third § 21), serves as a political check on possible Selectman bias and, therefore, further limits the need for judicial scrutiny of illicit personal motives of municipal officers.

In certain limited situations, however, courts have looked to legislators' motives. In general, court forays into legislative motive have been confined to laws that infringe upon fundamental rights or that discriminate on invidious grounds. *See e.g. Wallace v. Jaffree*, 472 U.S. 38, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985) (Establishment Clause); *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976) (race discrimination). Plaintiff argues that this case demands an analysis into the illicit motives of the selectmen.[5] The cases cited by Plaintiff in support of this proposition, however, are inapposite.

Plaintiff relies primarily on cases in which the Supreme Court looked to the underlying purpose of the legislation at issue. These cases, however, all involved legislation that infringed on an individual's fundamental rights, contained a suspect classification, or had a disparate impact upon a suspect class. *See e.g. Wallace v. Jaffree*, 472 U.S. 38, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985) (Establishment Clause); *Arlington Heights v. Metropolitan Housing Corporation*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977) (race discrimination); *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976) (race discrimination); *Epperson v. Arkansas*, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968) (Establishment Clause). Because

---

5. Plaintiff also contends that courts should defer to policy decisions of municipalities less, if at all, than to those of state legislators. Plaintiff relies on *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), a case that distinguishes between municipalities and states for the purposes of the Eleventh Amendment to the United States Constitution. The Court disagrees with Plaintiff that the *Monell* decision implies that municipalities are lower-ranking entities, entitled to less judicial deference for the purposes of analyzing the illicit motives of lawmakers. *See, e.g., Hillsborough County, Florida v. Automated Medical Laboratories, Inc.*, 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985) (local ordinances analyzed in same fashion as statewide laws under Supremacy Clause); *Golden State Transit Corporation v. Los Angeles*, 475 U.S. 608, 614 n. 5, 106 S.Ct. 1395, 1398 n. 5, 89 L.Ed.2d 616 (1986) (NLRA preemption applies equally to states, cities and towns).

At issue in this suit is the deference paid to the political process. The Maine Constitution provides for municipalities and for referenda. The Court finds no reason to treat such referenda, or the processes of municipal government, with less respect or deference than it would extend to other units of state government.

the Jay Ordinance does not infringe upon Plaintiff's fundamental rights and Plaintiff is not within a suspect class, the cases cited by Plaintiff are inapplicable.

Plaintiff argues that the Supreme Court has also analyzed legislative motive in cases challenging statutes as bills of attainder or as punitive. *See United States v. Lovett*, 328 U.S. 303, 66 S.Ct. 1073, 90 L.Ed. 1252 (1946) (bills of attainder); *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963) (punitive); *Trop v. Dulles*, 356 U.S. 86, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958) (punitive).

Again, the cases cited by Plaintiff simply do not have any application in this suit. Plaintiff has not challenged the Ordinance as, and it certainly can not be characterized as, a bill of attainder. Nor is the statute punitive. The two punitive statute cases Plaintiff relies on relate to statutes that deal with the citizenship of deserters from the United States armed forces. *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963); *Trop v. Dulles*, 356 U.S. 86, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958). The Ordinance at issue here is an environmental Ordinance. Even if the selectmen proposed or even passed the Ordinance to harm their opponents, such a political punitive motive does not warrant a court assessment of legislative motive. *Fraternal Order of Police Hobart Lodge No. 121*, 864 F.2d at 554.

Thus, the Court finds no reasons to deviate from the historical deference paid to the decisions derived from the democratic process. As the Supreme Court stated, "the Constitution presumes that even improvident decisions will eventually be rectified by the democratic process." *Cleburne*, 473 U.S. at 440, 105 S.Ct. at 3254. This is especially true in this suit, where the citizens of Jay voted for the referendum approving the Ordinance, have later voted not to repeal the Ordinance and continue to have the prerogative to reconsider it at any time.

*National Labor Relations Act*

 Count I of Plaintiff's Amended Complaint seeks to invalidate the Ordinance because it is preempted by the National Labor Relations Act (NLRA). Congress intended that economic weapons, not explicitly outlawed by the NLRA, be left to the free play of economic forces. *Machinists v. Wisconsin Employment Relations Commission*, 427 U.S. 132, 140, 96 S.Ct. 2548, 2553, 49 L.Ed.2d 396 (1976). States are prohibited from imposing additional restrictions on self-help economic weapons such as lockouts and strikes. *Id.* at 147, 96 S.Ct. at 2556; *Golden State Transit Corporation v. Los Angeles*, 475 U.S. 608, 614, 106 S.Ct. 1395, 1398, 89 L.Ed.2d 616 (1986). The crucial inquiry, where this argument is involved, is whether the state's action to curtail or prohibit self-help frustrates the implementation of the NLRA. *Golden State Transit Corporation*, 475 U.S. at 615, 106 S.Ct. at 1399; *Machinists v. Wisconsin Employment Relations Commission*, 427 U.S. 132, 147–48, 96 S.Ct. 2548, 2556–57, 49 L.Ed.2d 396 (1976). This rule applies equally to cities and towns. *See Golden State Transit Corporation*, 475 U.S. at 614 n. 5, 106 S.Ct. at 1398 n. 5.

 Plaintiff asserts that the environmental Ordinance was passed in order to force Plaintiff to cease hiring replacement workers, as it is permitted to do under the NLRA, and to make Plaintiff submit to the striking workers' demands. Plaintiff maintains that the Ordinance thus interfered with its right of self-help and relies on the case of *Golden State Transit Corporation v. Los Angeles*, 475 U.S. 608, 106 S.Ct. 1395, 89 L.Ed.2d 616 (1986) in support of its argument. As explained below, the Court finds that the case law does not support the finding that the environmental Ordinance interfered with Plaintiff's right of self-help.

In general, prior to *Golden State*, laws struck down due to NLRA preemption directly, on their face, affected parties' exercise of self-help. *See, e.g., Teamsters Union v. Morton*, 377 U.S. 252, 84 S.Ct. 1253, 12 L.Ed.2d 280 (1964) (state law awarding damages for peaceful union secondary picketing preempted); *Machinists v. Wisconsin Employment Relations Commission*, 427 U.S. 132, 140, 96 S.Ct. 2548, 2553, 49

L.Ed.2d 396 (1976) (state law-making employee refusal to work overtime an unfair labor practice preempted). Plaintiff argues that *Golden State* extended this line of cases and encompasses the issue before the Court.

In *Golden State*, the Golden State Transit Corporation, which operated taxi cabs in the Los Angeles area, applied to the Los Angeles City Council to renew their operating franchise. *Golden State Transit Corporation*, 475 U.S. at 609, 106 S.Ct. at 1396. The Los Angeles Board of Transportation recommended that the City Council approve the renewal. *Id.* While the renewal was pending, the company and its drivers became involved in a labor dispute that resulted in a driver's strike. *Id.* at 610, 106 S.Ct. at 1396. Due to the strike, the City Council voted to extend the franchise only if it clearly found that an extension was in the best interest of the city. *Id.* at 610, 106 S.Ct. at 1396. The district and appellate courts found that the city, in essence, conditioned the franchise on the settlement of the strike.[6] *Id.* 610–12, 106 S.Ct. at 1396–97.

The Supreme Court held that the City Council's decision, conditioning franchise renewal on settlement of the strike, "destroyed the balance of power designed by Congress, and frustrated Congress' decision to leave open the use of economic weapons." *Id.* at 619, 106 S.Ct. at 1401. The City Council's decision directly impacted the parties since it not only had the power to prevent Golden State Transit Corporation from operating its business *at all* within the city of Los Angeles, but it used the power. The case now before the Court is clearly distinguishable and would require an extension of NLRA preemption, as defined in *Machinists* and *Golden State*, that the Court finds is not warranted.

First, the Jay selectmen had a limited role in passing the Ordinance. The fact that the people of Jay voted for the Ordinance during the strike and voted not to repeal the Ordinance after the strike is consequential. Unlike the City Council in *Golden State*, the selectmen did not act unilaterally. Thus the motives of the selectmen in proposing and commissioning the drafting of the law are not decisive. It would entail a large departure from *Golden State* for this Court to invalidate an otherwise constitutionally valid law, voted on by the people, because of the *animus* of the public officials who proposed the law. The Court finds that such a departure is unwarranted.

Second, the law at issue in this suit is an environmental Ordinance. The Jay environmental Ordinance protects the health and safety of the citizens of Jay, and the Court should refrain from invalidating citizens' right to vote for such laws regardless of the motives of the town officials who propose them.[7] As noted above, courts must give particularly wide latitude to social legislation. *Cleburne v. Cleburne Living Center, Inc.* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313.

Finally, the Ordinance does not have the direct effect on the bargaining position of the parties that denial of the franchise renewal had in *Golden State*. Even accepting Plaintiff's allegations, the Ordinance has only an indirect effect on Plaintiff's bargaining position. The Court of Appeals for the First Circuit has held, under somewhat different circumstances, that indirect intrusions into collective bargaining such as "clean air and water laws" are not preempted by the NLRA. *Massachusetts Nursing Association v. Dukakis*, 726 F.2d 41, 45 (1984). Thus, the Court holds that this suit is distinguishable from *Golden State*, and that NLRA preemption, as a matter of law, does not apply.

---

**6.** Plaintiff argues that a factual record, like that in *Golden State,* is necessary for the Court to decide this issue. However, because the Court views all of Plaintiff's allegations concerning Defendants' motives as true, the Court finds that the issue may be decided as a matter of law.

**7.** The Court adds the caveat noted in *Massachusetts Nursing Association* that "any pretextual, arbitrary, or capricious invocation [of the law] as an excuse for refusal to bargain over wages or working conditions would present quite a different case, subject to different principles. *Massachusetts Nursing Association,* 726 F.2d 41, 45 (1st Cir.1984).

## Conflict of Interest

In Count III of the Amended Complaint, Plaintiff argues that the Ordinance violates Maine's conflict of interest statute, 30 M.R.S.A. § 2251 (1978), and Maine common law. While it must be assumed, for the purposes of Defendants' Motion for Dismissal, that the selectmen acted out of their own self-interest in drafting and proposing the Ordinance, the Court finds that neither the application of the statute nor the common law entitles Plaintiff to the remedy of invalidating the statute.

There is little question that, according to the allegations contained in Plaintiff's Amended Complaint, the town selectmen acted in their own self-interest in commissioning the drafting of the Ordinance and proposing it. By acting in their own pecuniary interests in this fashion, it is possible that the selectmen violated either common law notions of conflict of interest or 30 M.R.S.A. § 2251(1).[8] However, neither the statute nor the common law *require* that a conflict of interest invalidate the acts taken by the decision-making body. 30 M.R.S.A. § 2251(1) (actions are voidable); *Blaisdell v. Inhabitants of the Town of York*, 110 Me. 500, 87 A. 361 (1913).

Maine courts have not had the opportunity to apply 30 M.R.S.A. § 2251 to a case analogous to this suit. Plaintiff argues that the selectmen fall within the statute's standard of "direct or indirect pecuniary interests." The issue is not resolved, however, simply upon a finding that some members or all members of a body had pecuniary conflicts of interest. The statute makes the votes taken by such a body voidable, not void. The statute and its legislative history indicate that the Maine legislature intended to allow courts the discretion to uphold such actions. *See* 2 Legis.Rec. 2404, 2135 (1974).

While the legislature seemed primarily concerned with contracts left partially completed upon the finding of a conflict of interest, it appears to the Court that at the heart of the legislators' concern was the desire to prevent local governments from having to "go back and retrace [their] steps," where to do so would be unnecessary. *See Id.* The town of Jay has made it clear by their subsequent vote not to repeal the Ordinance, that retracing the selectmen's steps and re-proposing the Ordinance would be unnecessary. This is especially true in light of the selectmen's non-decisive role in the passing of the Ordinance. The Court would be exalting form over substance if its decision forced the selectmen to re-propose the Ordinance, thereby requiring the town to vote yet another time on the Ordinance. Thus, under the statute, the Court finds that the selectmen's decisions to commission the drafting of the Ordinance and to propose the Ordinance do not cause the Ordinance itself to be invalid.

If the statute did not apply, under Maine common law, an act undertaken by a governmental body is also voidable when members of the body have impermissible conflicts of interest. In *Blaisdell*, the town of York petitioned the County Commissioners to lay out a public way. *Blaisdell*, 110 Me. at 502, 87 A. 361. The Commissioners laid out the way in such a fashion that it had to pass land partly owned by a Commissioner, causing a conflict of interest for that Commissioner. *Id.* at 508, 87 A. 361. The town, nevertheless, voted to approve the way as laid out by the Commissioners. *Id.* at 502, 87 A. 361. In light of these facts, the Maine Law Court held that the ensuing contract to build the way was not void, but voidable, and refused to invalidate the town's referendum approving the location of the way chosen by the Commissioners, despite a Commissioner's conflict of interest. *Id.* at 508–514, 87 A. 361.

The fact that the people of Jay have had two opportunities to vote on the Ordinance, coupled with the nature of the selectmen's role in bringing about its passage, causes this Court to find that the Ordinance itself is not invalidated by the selectmen's ac-

---

8. The pertinent part of the statute reads as follows:

 1. Voting. The vote of a body is voidable when any official in his official position votes on any question in which he has a direct or an indirect pecuniary interest.

30 M.R.S.A. § 2251(1).

tions as they are alleged. Of course, if the Ordinance were to be *applied* in an arbitrary or punitive fashion, different standards of analysis would apply.

Accordingly, it is ORDERED that Defendants' Motion for Judgment on the Pleadings be, and it is hereby, GRANTED as to Counts I, II, and III of Plaintiff's Amended Complaint.

It is further ORDERED that counts VII, VIII, and IX of Plaintiff's Amended Complaint be, and they are hereby, DISMISSED. *See supra* 361-62 n. 1 & 2.