**INTERNATIONAL PAPER COMPANY, Plaintiff, Appellant,**

v.

**TOWN OF JAY, et al., Defendants, Appellees.**

No. 90–1602.

United States Court of Appeals, First Circuit.

Heard Nov. 7, 1990.
Decided March 21, 1991.

William J. Kayatta, Jr. with whom Catherine R. Connors, and Pierce, Atwood, Scribner, Allen, Smith & Lancaster, were on brief, Portland, Me., for plaintiff, appellant.

Theodore E. Dinsmoor with whom Gilbert R. Hoy, Jr., Gaston & Snow, Boston, Mass., Gerald F. Petruccelli and Petruccelli, Cox & Martin, were on brief, Portland, Me., for defendants, appellees.

Before SELYA, Circuit Judge, and BROWN * and BOWNES, Senior Circuit Judges.

JOHN R. BROWN, Senior Circuit Judge:

The International Paper Company ("IP"), an industry operating in the town of Jay, Maine ("the Town" or "Jay"), brought suit to invalidate and enjoin enforcement of a

municipal ordinance ("the Ordinance") which regulated the emission of pollutants by Jay industries, including IP. IP claimed that the Ordinance placed undue restrictions upon its bargaining power in a labor dispute with striking unions and violated various federal and state laws. In a comprehensive opinion, 736 F.Supp. 359 (D.Me. 1990), the district court granted judgment on the pleadings in the Town's favor, Fed. R.Civ.P. 12(c), and this appeal follows. Concluding that IP could not have prevailed at trial under any conceivable set of facts asserted by the pleadings, we affirm primarily on the firm footing of the district court's opinion, as supplemented by this opinion.

## How It All Began

In June 1987, two unions representing 1,200 workers at the Jay, Maine, pulp and paper processing facility of IP went on strike. IP managed to continue operations at the mill by hiring replacement workers. In August, the Jay Board of Selectmen, which mostly included striking IP employees, enacted two ordinances, neither of which is involved in the present appeal. One of the ordinances prohibited IP from housing replacement workers at the mill, while the other authorized town officials to oversee enforcement of various federal, state, and local environmental laws and regulations at the mill. Apparently in response to a lawsuit filed by IP to invalidate these ordinances, again unrelated to this appeal, the Board repealed them voluntarily.

In November 1987, the town's legal counsel, at the Board's behest, drafted the Jay Environmental Control and Improvement Ordinance (the Ordinance). This third Ordinance—the subject of IP's present attack—is an elaborate regulatory scheme. Its primary requirement is that Jay industries and businesses obtain such a permit from a special planning board before they may discharge pollutants. In order to obtain a permit, an applicant must comply with local environmental regulations contained in the Ordinance. In December the Board proposed that the Ordinance be put to a public referendum. Two public hearings followed, and the town enacted the Ordinance by referendum vote on May 21, 1988.

The strike was resolved in IP's favor after commencement of this suit. A second referendum followed, where Jay citizens rejected a proposal to repeal the Ordinance. The Ordinance remains the law of Jay.

IP's amended complaint lists several counts, all of which were dismissed below on various motions. IP appeals the district court's Rule 12(c)[1] dismissal of Counts I, II, and III, which present the following contentions: (1) the Jay Ordinance impermissibly interfered with IP's collective bargaining rights in the 1987–88 strike, curtailing self-help and frustrating the operation of the National Labor Relations Act (NLRA), 29 U.S.C. §§ 151 *et seq.;* (2) the Ordinance represents an abuse of governmental powers depriving IP of its Equal Protection and Due Process rights guaranteed by the Fourteenth Amendment to the United States Constitution; and (3) the Ordinance violates Maine's conflicts of interest statute, 30 M.R.S.A. § 2251 (1978), and Maine common law.

## Standard of Review

We review the district court's grant of the Town's Fed.R.Civ.P. Rule 12(c) motion *de novo,* as if we were considering the Town's motion anew. *See Frissell v. Rizzo,* 597 F.2d 840, 845 (3d Cir.), *cert. denied,* 444 U.S. 841, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979). Like the trial court, therefore, we accept as true all material allegations of the amended complaint, and construe them in favor of the complaining party, IP. *Rivera–Gomez v. de Castro,* 843 F.2d 631, 635 (1st Cir.1988). Finally, we cannot uphold the district court's action "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claims

---

**1.** Rule 12(c) provides, in pertinent part:

    **(c) Motion for Judgment on the Pleadings.** After the pleadings are closed but within such

time as not to delay the trial, any party may move for judgment on the pleadings. . . . Fed.R.Civ.P. 12(c).

which would entitle [it] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957); *Rivera–Gomez,* 843 F.2d at 635. *See also, Barber v. M/V BLUE CAT,* 372 F.2d 626, 629 (5th Cir.1967).

### NLRA Preemption

▇ IP first attacks the Jay Ordinance on the ground that it violates the policy of Congress, implicit in the NLRA, to leave certain unregulated self-help weapons in a labor dispute, such as lockouts, strikes, and the hiring of replacement workers, to the "free play of economic forces." *Machinists v. Wisconsin Employment Relations Comm'n,* 427 U.S. 132, 140, 96 S.Ct. 2548, 2553, 49 L.Ed.2d 396, 403 (1976). IP urgently stresses that the Supreme Court's opinion in *Golden State Transit Corp. v. Los Angeles,* 475 U.S. 608, 106 S.Ct. 1395, 89 L.Ed.2d 616 (1986), should control this appeal. According to *Golden State,* the crucial inquiry posed by the "free play" argument is whether the state or municipal action complained of "frustrates the effective implementation" of the NLRA. *Id.* at 615, 106 S.Ct. at 1399, 89 L.Ed.2d at 624 (*quoting Machinists,* 427 U.S. at 148, 96 S.Ct. at 2357, 49 L.Ed.2d at 408).

Because it is critical to IP's approach, we think *Golden State* warrants detailed discussion. In *Golden State,* a company which operated taxicabs in the Los Angeles area applied to the city for renewal of its operating franchise. The city's Board of Transportation Commissioners initially recommended renewal of the franchise. While the application was pending, the cab company's drivers went on strike, halting its operations. The City Council consequently delayed action on the renewal application and ultimately defeated a motion to extend the franchise, allowing it to expire. During discussion on the application, the Council reached a consensus "for rejection of the extension with a possibility for reopening the issue if the parties settled their labor dispute before the franchise expired...." *Id.* at 611, 106 S.Ct. at 1397, 89 L.Ed.2d at 621.

The Supreme Court, applying the *Machinists* preemption principle, held the City Council's action illegal. The *Machinists* doctrine, the Court stated, "precludes state and municipal regulation 'concerning conduct that Congress intended to be unregulated.'" *Id.* at 614, 106 S.Ct. at 1398, 89 L.Ed.2d at 623 (*quoting Metropolitan Life Insur. Co. v. Massachusetts,* 471 U.S. 724, 749, 105 S.Ct. 2380, 2394, 85 L.Ed.2d 728, 746 (1985)). The Court determined that the city's effective "positive durational limit" on the labor dispute amounted to an impermissible entry "'into the substantive aspects of the bargaining process to an extent Congress has not countenanced.'" *Id.* at 616, 106 S.Ct. at 1399, 89 L.Ed.2d at 624–25 (*quoting Machinists,* 427 U.S. at 149, 96 S.Ct. at 2357, 49 L.Ed.2d at 409). By conditioning the franchise grant on settlement of the strike, the Court held, the City Council infringed on the free play of economic forces. Such a trespass constituted a direct, tangible interference with the labor dispute and was preempted by the NLRA. *Id.* at 619, 106 S.Ct. at 1401, 89 L.Ed.2d at 627.

As the trial court correctly determined, the instant case is easily distinguishable from *Golden State.* IP's proposal to apply that case here would require an unprecedented extension of the *Machinists* doctrine and NLRA preemption. *See* 736 F.Supp. at 366. First, while IP focuses exclusively on the actions of the Jay Board of Selectmen, the Board did not enact the environmental Ordinance. The citizens of Jay by referendum voted in the proposed Ordinance after holding two public hearings. The Board's role, however important, was limited to directing that the bill be drafted and proposing it to the citizens of Jay. In contrast, in *Golden State* the Los Angeles City Council took direct unilateral action against the employer to pressure it to submit to striking employees' demands. IP would have this Court invalidate the Jay Ordinance on the tenuous "but-for" basis that the Ordinance would not have become law had the Board not proposed it. We are unwilling to construe *Golden State* so broadly as to require inquiry, on the facts of this case, into the

motives of the selectmen prior to the Board's drafting and proposing the Ordinance.

In any event, we prefer not to rest our holding on this ground, for we are unwilling to apply *Golden State* to such state action which only remotely affects the bargaining powers of the parties to a labor dispute. While the Court in *Golden State* may have retreated from its prior steadfast position that only state actions passed with the intent of directly altering the substantive outcome of a labor dispute should be preempted, it remains the law that actions which regulate activity only peripherally related to labor policy, without placing conditions on the conduct of the parties to the dispute, are not subject to preemption. *See id.* 475 U.S. at 612, 106 S.Ct. at 1397, 89 L.Ed.2d at 622. In *Golden State*, the City Council expressly conditioned the employer's franchise renewal on the settlement of the labor dispute. *Id.* at 619, 106 S.Ct. at 1401, 89 L.Ed.2d at 627. The nexus between the City's action and the parties' collective bargaining positions was indisputable, and the City's placement of conditions on renewal of the employer's operating franchise forced its hand in the dispute.

On the other hand, reading IP's complaint in its most favorable light, there is no reasonable, conceivable set of facts suggested by IP to convince either the trial court or this Court that the Jay Ordinance forced IP to accede to the unions' demands. *See Conley*, 355 U.S. at 45–46, 78 S.Ct. at 102, 2 L.Ed.2d at 84. The Ordinance's effect on IP's bargaining position is no more direct than that of the state statute regulating hospital cost increases in *Massachusetts Nursing Ass'n v. Dukakis*, 726 F.2d 41 (1st Cir.1984). There we held that the statute was not preempted by the Labor Management Relations Act (LMRA), 29 U.S.C. §§ 141 *et seq.*, because it only indirectly prejudiced a nurses' union's bargaining position. *Id.* at 45. Examining the implications of the union's argument, identical to IP's here, the Court stated:

> [I]n any industry the price of whose product or service—such as electric power, telephone, natural gas, or even rent controlled real estate—is regulated, a

state would find its regulatory system vulnerable to preemptive attack on the ground that the overall control of price was too inhibiting an influence on collective bargaining. Logic, however, would carry beyond simple price control. *Any state or municipal program that substantially increased the costs of operation of a business in a competitive market would be similarly vulnerable to the preemption argument.*

*Id.* (emphasis added). *See also, Southwestern Bell Telephone Co. v. Arkansas Public Service Comm'n*, 824 F.2d 672 (8th Cir.1987); *Washington State Nurses Ass'n v. Washington State Hosp. Comm'n*, 773 F.2d 1044 (9th Cir.1985), *cert. denied*, 475 U.S. 1120, 106 S.Ct. 1637, 90 L.Ed.2d 183 (1986) (rejecting similar preemption challenges). IP's is the extreme contention contemplated and expressly rebuffed in *Massachusetts Nursing Ass'n*.

Furthermore, the present allegations are not significantly different from those asserted by the union in *Massachusetts Nursing Ass'n* even though IP charges that environmental health and safety was merely a pretext for the Board's actual plan to pressure IP. The fact that the Jay Ordinance is the product of a popular referendum robs this argument of its thunder and leads us to restate our belief that indirect intrusions into collective bargaining, such as *"[c]lean air and water laws*, selective cutting requirements in forest operations, industrial safety standards, [and] tax increases,"* are rarely preempted by labor statutes such as the LMRA and the NLRA. 726 F.2d at 45 (emphasis added). Thus, we refuse IP's invitation to extend *Golden State* to a situation which amounts at best only to a remote, indirect trespass on the employer's effective bargaining powers.

### Equal Protection and Substantive Due Process

■ IP's claim that the Ordinance represents an abuse of governmental powers and deprives IP of the Equal Protection and Due Process rights guaranteed it by the Fourteenth Amendment to the United

States Constitution is similarly without merit. The trial court applied the rational basis test and found that the Ordinance is not constitutionally infirm since it is rationally related to legitimate municipal ends. We agree.

██ Social or economic legislation such as the Jay Ordinance, which purports to protect the health and safety of Jay citizens, is presumed to be valid and not violative of the Due Process or Equal Protection Clauses "if the classification drawn by the statute is rationally related to a legitimate state interest." *Cleburne v. Cleburne Living Center*, 473 U.S. 432, 440, 105 S.Ct. 3249, 3354, 87 L.Ed.2d 313, 320 (1985); *Schweiker v. Wilson*, 450 U.S. 221, 230, 101 S.Ct. 1074, 1080, 67 L.Ed.2d 186, 195 (1981).[2] Moreover, the Court is obliged to give governments wide latitude in creating social and economic legislation such as the Ordinance: "the federal courts do not sit as arbiters of the wisdom or utility of these laws." *Alamo Rent–A–Car, Inc. v. Sarasota–Manatee Airport Authority*, 825 F.2d 367, 370 (11th Cir.1987) (*citing Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 469, 101 S.Ct. 715, 726, 66 L.Ed.2d 659, 672 (1981)). Without circumstances to induce heightened judicial scrutiny, which are totally absent here, we are entitled to presume the Ordinance to be valid and are not required to delve into the motivations of the Board members who proposed and drafted the Ordinance.

The district court's thorough analysis here needs no improvement: while courts may look to legislators' motives where a suspect or quasi-suspect classification is subjected to discrimination or a fundamental right is infringed, *see e.g., Wallace v. Jaffree*, 472 U.S. 38, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985) (Establishment Clause); *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976) (race discrimination), absent these circumstances, we " 'will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive.' " *International Paper*, 736 F.Supp. at 364 (*quoting United States v. O'Brien*, 391 U.S. 367, 383, 88 S.Ct. 1673, 1682, 20 L.Ed.2d 672, 683 (1968)). Once again, in consideration of the critical role that Jay's citizens played in enacting the Ordinance we are satisfied in concluding that the selectmen's motives are not subject to scrutiny. As the district court stressed, "[t]he referendum, referred to as 'the people's veto' in the Maine Constitution ... serves as a political check on possible Selectman bias and, therefore, further limits the need for judicial scrutiny of illicit personal motives of municipal officers." *Id.*

Focusing upon the Ordinance itself, there cannot be any doubt that it serves the legitimate governmental interest of controlling the discharge of pollutants into the air, water, and ground, and that its regulatory means are logically related to its stated purpose of protecting "the public health, safety and welfare of the inhabitants of the Town of Jay and ... the Town of Jay's environment." Jay Environmental Control and Improvement Ordinance § 1–102. We conclude that IP did not demonstrate or even suggest any conceivable *Conley* set of circumstances which could have overcome the presumption of validity which the Ordinance enjoys. IP's 42 U.S.C. § 1983 substantive due process and equal protection claims were therefore properly dismissed.

### *Conflict of Interest*

██ Finally, IP argues that the Ordinance is void under Maine's conflicts of interest statute[3] and the state's common

---

**2.** This general rule does not apply when the statute involves suspect classifications such as race, alienage, or national origin, or "quasi-suspect" classifications such as gender and illegitimacy, or if the statute affects personal and fundamental rights. *Id.* 473 U.S. at 440–41, 105 S.Ct. at 3254–55, 87 L.Ed.2d at 320–21. The Jay Ordinance does not single out and govern any suspect or quasi-suspect classifications of per-

sons; nor does it abridge any fundamental right.

**3.** Maine's conflicts of interest statute is found at 30 M.R.S.A. § 2251 (1978), and provides in relevant part:

1. Voting. The vote of a body is voidable when any official in his official position votes on any question in which he has a direct or an indirect pecuniary interest.

law. IP argues that each of the Jay Board members had at least an indirect pecuniary interest in passing the Ordinance, and therefore the district court should have allowed IP's claim under this statute to go forward. The complaint contains no allegations that the Board members' "pecuniary interest" fits within the statutory definition, however, which provides that a conflict of interest is present where the official is:

> ... an officer, director, partner, associate, employee or stockholder of a private corporation, business or other economic entity to which the question relates ... [and] *only where the official is directly or indirectly the owner of at least 10% of the stock of the private corporation or owns at least a 10% interest in the business or other economic entity.*

30 M.R.S.A. § 2251(4). IP's failure to allege that any member of the Board satisfies this provision is fatal to its statutory claim.[4]

■ Maine common law notions of conflicts of interest sufficient to merit the invalidation of a municipal ordinance are broader than § 2251, but not as broad as IP would have us interpret them to be. All of the cases upon which IP relies involve the conferring of a pecuniary benefit to be gained directly and personally from the municipal action. *See, e.g., Tuscan v. Smith,* 130 Me. 36, 153 A. 289 (1931) (voiding a lease entered into by Town selectmen where the Chairman of the Board had a direct financial interest in the affairs of the lessee); *Hochberg v. Borough of Freehold,* 40 N.J.Super. 276, 123 A.2d 46 (1956) (invalidating a zoning ordinance amendment where a planning board member's business stood to benefit directly from the new ordinance). Compared to these traditional instances of voidable municipal actions, IP's argument is an entirely different animal.

IP suggests that the Jay selectmen had a conflict in proposing the environmental Ordinance because of the indirect pecuniary interest they held in seeing the labor dispute resolved in the unions' favor. The benefits which were presumed to inure to the individual Jay selectmen were hardly certain, and in fact did not come about, unlike the clear advantages present in the cited cases. Established precedent does not support the attenuated construction of Maine common law IP proposes, and we refuse to make such an extension here.

In light of the foregoing discussion, we conclude that the district court was clearly correct in disposing of all of the matters presented in this appeal by way of Rule 12(c) dismissal.

Affirmed.

---

**4.** We also agree with the district court that the plain language of the statute makes the vote taken by the Board voidable rather than void, and leaves discretion whether to uphold such actions to the courts. 736 F.Supp. at 367. Furthermore, taking the allegations in the complaint as true, we agree with the district court that under the circumstances the environmental Ordinance would not have invoked application of the statute because of the important factor of the participation of the citizens of Jay, first in passing the Ordinance by referendum and later in rejecting its repeal in a subsequent referendum. *See id.* Considering the loose foundation for IP's claim of an actionable "conflict" and the democratic participation of the Jay citizenry, the district court properly dismissed this claim.