**MAGNUM DEFENSE, INC., Plaintiff,**

v.

**HARBOUR GROUP LTD, Tubular Textiles, LLC, Marshall & Williams Products, Inc. and Parkinson Machinery & Manufacturing Corporation, Defendants.**

**C.A. No. 02–158S.**

United States District Court,
D. Rhode Island.

March 3, 2003.

Joseph Avanzato, Adler Pollock & Sheehan, Providence, RI, James E. Fitzgerald, Esq., Luce, Forward, Hamilton & Scripps, Los Angeles, CA, for plaintiff.

Joseph P. Ferrucci, Joseph P. Ferrucci, Ferrucci & Russo, P.C., Providence, RI, W. Mark Russo, Matthew L. Marshall, Morris, Polich & Purdy, Los Angeles, CA, Laura H. Hamilton, Esq., Dickstein Shapiro Morin & Oshinsky LLP, Washington, DC, Barbara S. Cohen, Jerry H. Elmer, Goldenberg & Muri, Providence, RI, William T. Rintala, Rintala, Smoot, Jaenicke & Rees, Los Angeles, CA, for defendant.

### DECISION AND ORDER

SMITH, District Judge.

Magnum Defense, Inc. ("Magnum" or "Plaintiff") is a California defense research firm and contractor that developed a process for the production of a high technology plastic film.[1] This so-called Magnalon Film was designed primarily for use in the guidance system of missiles and torpedoes,

---

1. Magnum is a California corporation with its principal place of business in California.

but it also has other commercial applications. Over time, through a series of acqusitions and transactions, the trade secrets associated with Magnalon Film passed through various companies and individuals. Magnum has sued these companies for the alleged misappropriation of those trade secrets. This matter is before the Court on a Motion for Judgment on the Pleadings pursuant to Fed.R.Civ.P. 12(c) brought by Defendant Harbour Group., Ltd. For the reasons detailed below, the Defendants' motion is denied in part and granted in part.

## I. *Standard of Review*

Federal Rule of Civil Procedure 12(c) allows a party, "[a]fter the pleadings are closed but within such time as not to delay the trial, [to] move for judgment on the pleadings." *Rivera–Gomez v. de Castro*, 843 F.2d 631, 635 (1st Cir.1988) (citing *Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 61 (2nd Cir. 1985)). In reviewing a Rule 12(c) motion, a court must accept all of the non-movant's well-pleaded factual averments as true and draw all reasonable inferences in his or her favor. *Id.; see Int'l Paper Co. v. Town of Jay*, 928 F.2d 480, 482 (1st Cir. 1991). The court may not grant a Rule 12(c) motion unless it appears beyond a doubt that the non-movant can prove no set of facts in support of his or her claim or defense which would entitle the non-movant to prevail. *Rivera–Gomez*, 843 F.2d at 635; *see Int'l Paper Co.*, 928 F.2d at 482–83.

■ The standard for granting a motion to dismiss and a motion for judgment on the pleadings is the same. *See Whiting v. Maiolini*, 921 F.2d 5, 6 (1st Cir.1990) (district court was within its discretion in converting movant's Rule 12(c) motion for judgment on the pleadings to 12(b) motion for failure to state a claim); *Nedder v. Rivier College*, 944 F.Supp. 111, 120

(D.N.H.1996) (standard for evaluating a Rule 12(c) motion for judgment on the pleadings is the same as the standard for evaluating a Rule 12(b)(6) motion). The trial court may dismiss a complaint under Rule 12(b)(6) or Rule 12(c) only if no relief can be granted based on any set of facts that could be proved consistent with plaintiff's allegations. *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Figueroa v. Rivera*, 147 F.3d 77, 80 (1st Cir.1998). In considering either motion, the court must treat all well-pleaded factual allegations contained in the complaint as true and draw all reasonable inferences therefrom in favor of the plaintiff. *Coyne v. City of Somerville*, 972 F.2d 440, 442–43 (1st Cir.1992); *Rumford Pharmacy, Inc. v. City of East Providence*, 970 F.2d 996, 997 (1st Cir. 1992).

## II. *Facts*

Taking all well pleaded facts as true, as this Court must, the circumstances that gave rise to this action are as follows. In 1996, Magnum entered into a prime contract with the United States Air Force whereby Magnum was to perform additional research and development on its product, Magnalon Film, and to build and deliver a pilot line of machines to synthesize and extrude Magnalon Film. Magnum entered into a written subcontract (the Basic Ordering Agreement or "BOA") with a Rhode Island manufacturer, Marshall & Williams Company ("M & W"), whereby M & W would manufacture, assemble and deliver a machine that would "advanc[e] the state-of-the-art in orienting polymer films" (the "Machine"). Magnum alleges that it disclosed confidential and proprietary information (in oral, written, and computerized form) to M & W in order for M & W to build the Machine. To protect this confidential information, Magnum entered into a written confidentiality agreement

(the "Confidentiality Agreement") with M & W.

Problems arose in the construction of the Machine, and in 1999, Magnum sued M & W in California Superior Court for, *inter alia*, breach of contract (based, in part, on M & W's failure to return Magnum's confidential information upon demand) and fraud (the "California Action"). M & W removed the California Action to the United States District Court for the Central District of California and counterclaimed for the unpaid balance due on the subcontract. At oral argument before this Court on January 24, 2003, counsel for Magnum represented that both the BOA and the Confidentiality Agreement were attached to the complaint in the California Action. In September 2000, the California District Court found M & W liable for fraud and breach of contract, and entered judgment for Magnum in the amount of $5,230,000, including punitive damages and costs.

At the time the California Action was proceeding, M & W was petitioned into receivership in Rhode Island, and in February 2000, a Receiver appointed by the Rhode Island Superior Court sold M & W's assets to Defendant Harbour Group Ltd. ("Harbour").[2] M & W's counterclaim (of approximately $600,000) in the California Action was also sold to Harbour, but in March 2000, Harbour agreed to dismiss the counterclaim. Magnum alleges that many of its confidential Trade Secrets (including drawings, technical specifications,

designs, models, component descriptions and logistics, blueprints, computer files, software, and pass codes) (collectively the "Trade Secrets") were included in the assets sold and transferred to Harbour (although they were not listed as part of the assets sold). *See* Magnum Defense, Inc.'s Memorandum of Law in Support of Opposition to Harbour Group Defendants' Motion for Judgment on the Pleadings, p. 6. Magnum further asserts that it had not authorized (and, indeed, did not know of) the sale or transfer of its Trade Secrets to Harbour and that it received no compensation therefor. Moreover, Magnum alleges that in 1999 and 2000, it made several written and oral demands to the Receiver for the return of its Trade Secrets, but received no response.

Shortly after it purchased the M & W assets, Harbour transferred those assets (including Magnum's Trade Secrets) to its wholly-owned subsidiary, Defendant Tubular Textiles, LLC ("Tubular").[3] Tubular, in turn, transferred the M & W assets (including Magnum's Trade Secrets) to its wholly-owned subsidiary, Defendant Marshall & Williams Products, Inc. ("Products").[4] Products next transferred a portion of the M & W assets (including Magnum's Trade Secrets) to Defendant Parkinson Machinery & Manufacturing Corp. ("Parkinson").[5] Parkinson then reorganized the M & W assets (including Magnum's Trade Secrets) into a new divi-

**2.** Harbour is a Delaware corporation and its principal place of business is in Missouri.

**3.** Tubular is a North Carolina corporation and its principal place of business is in North Carolina.

Defendants allege that it was, in fact, an entity named "Harbour Group Industries, Inc." that purchased the M & W assets and then assigned its rights to those assets to Marshall & Williams Products, Inc. *See* Memorandum in Support of Motions for Judgment

on the Pleadings and for Attorney's Fees ("Defendants' Memorandum"), p. 3 n. 3. It is not necessary for the Court to make a determination on this issue in order for it to decide the instant motion.

**4.** Products is a Delaware corporation and its principal place of business is in South Carolina.

**5.** Parkinson is a Rhode Island corporation and its principal place of business is in Rhode Island.

sion named Marshall & Williams Plastics ("Plastics").

Magnum claims that Products, Parkinson, and Plastics employ former M & W employees who are knowledgeable about the Confidentiality Agreement and the Trade Secrets. Magnum accuses Parkinson d/b/a Plastics of using the Trade Secrets to produce machinery and equipment similar to that contemplated in the BOA.

On June 21, 2001, Magnum sent a letter to Harbour, Tubular, Products, and Parkinson demanding the return of its Trade Secrets. In response, Harbour and Products filed a motion for contempt against Magnum in the Rhode Island Superior Court overseeing the M & W receivership, claiming that the demand letter violated that court's order that the M & W assets were sold "free and clear" of all liens and encumbrances.[6]

On November 30, 2001, Magnum filed this action in United States District Court for the Central District of California, alleging that Harbour, Tubular, Products, and Plastics misappropriated Magnum's Trade Secrets or otherwise violated California law. Harbour, Tubular, and Products (collectively the "Harbour Defendants") moved to dismiss the case for lack of personal jurisdiction on the ground that the parties were not completely diverse. After allowing limited discovery solely on the jurisdictional issue, the California court concluded that it did not have personal jurisdiction over the named Defendants, and therefore, transferred the case to this Court pursuant to 28 U.S.C. § 1631.

The Complaint sets forth six counts: (1) Misappropriation of Trade Secrets in violation of the Uniform Trade Secrets Act ("UTSA") by the Harbour Defendants; (2) Misappropriation of Trade Secrets in violation of California common law by the Harbour Defendants; (3) Misappropriation of Trade Secrets in violation of UTSA by Parkinson; (4) Misappropriation of Trade Secrets in violation of California common law by Parkinson; (5) unfair business practices in violation of the California Unfair Business Practices Act by all Defendants; and (6) unfair competition in violation of California common law by all Defendants.

The Harbour Defendants now move for judgment on the pleadings on all claims against them (Counts 1, 2, 5, and 6) pursuant to Fed.R.Civ.P. 12(c), and for attorneys' fees. They contend that the Harbour Defendants could not have misappropriated Magnum's Trade Secrets because they did not know or have reason to know of the existence of the Trade Secrets. They also argue that Rhode Island law controls this dispute and that the Rhode Island Uniform Trade Secrets Act ("RIUTSA") preempts a common law claim for misappropriation. Based on these assertions, the Harbour Defendants claim that they are entitled to attorneys' fees under the fee-shifting provisions of RIUTSA.[7] Finally, the Harbour Defendants argue that Rhode Island does not recognize a cause of action in these circumstances either for unfair business practices or unfair competition.

## III. *Analysis*

### A. *Choice of Law*

In their written submissions, both parties have relied exclusively on Rhode Island law to support their substantive legal

---

**6.** The motion for contempt was heard by Judge Silverstein on September 20, 2001. No decision on that motion has yet been rendered.

**7.** R.I. Gen. Laws § 6–41–4 provides in relevant part that "[i]f ... a claim of misappropriation is made in bad faith ... the court may award reasonable attorney's fees to the prevailing party."

claims. However, at oral argument, counsel for Magnum suggested that California law might govern some of the claims in the case.

■ A federal court sitting in diversity must apply the law of the forum state, *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), including that state's conflict of law rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co. Inc.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Crellin Technologies, Inc. v. Equipmentlease Corp.*, 18 F.3d 1, 4 (1st Cir.1994) ("[i]n determining what state law pertains, the court must employ the choice-of-law framework of the forum state, here, Rhode Island"). Under Rhode Island law, the choice of law applicable to a substantive issue depends upon whether the particular claim is properly characterized as a contract claim or a tort claim. *See id.* at 11–12 (determining that a claim brought pursuant to Mass. Gen. Laws ch. 93A should be considered a tort claim for choice of law purposes if the requested remedy is highly analogous to that of a tort claim); *Scully Signal Co. v. Joyal*, 881 F.Supp. 727, 742 (D.R.I.1995) ("[t]he facts underlying the claim and the conduct complained of are the relevant factors in determining if the claim is most analogous to a tort or contract claim").

■ Plaintiff has alleged, in every relevant count of the Complaint, that the Harbour Defendants engaged in "wrongful," "willful," "deliberate," and "malicious" conduct by misappropriating, holding, using, selling, disclosing, and disposing of Magnum's Trade Secrets. *See* Complaint, ¶¶ 45–48, 50–53, 65, 68–70. These claims sound in tort. Therefore, the Court will apply the Rhode Island conflict of law principles applicable to tort claims.

Rhode Island has adopted an interest-weighing analysis to choose between the conflicting tort law of two or more states. *See Scully*, 881 F.Supp. at 744 (citing *Woodward v. Stewart*, 104 R.I. 290, 243 A.2d 917, *cert. dismissed sub nom., Vizcarra–Delgadillo v. U.S.*, 393 U.S. 957, 89 S.Ct. 387, 21 L.Ed.2d 371 (1968); *Brown v. Church of the Holy Name of Jesus*, 105 R.I. 322, 252 A.2d 176 (R.I.1969)). "In a misappropriation of trade secrets case such as the present one, the defendants' wrongful conduct is said to take place where the defendants misused the plaintiff's confidential information for their own benefit." *Scully*, 881 F.Supp. at 744. Similarly, "[i]n the context of unfair competition claims, the place of the defendants' conduct is the overriding factor to be considered." *Id.*

Here, the evidence indicates that the alleged wrongful conduct occurred in Rhode Island. The underlying tort is the purchase and sale, in Rhode Island, of receivership assets containing the Trade Secrets. Furthermore, Magnum claims that Parkinson d/b/a Plastics, a Rhode Island entity, has misused and continues to misuse the Trade Secrets to construct machinery similar to what was contracted for in the BOA. Parkinson would never have obtained the Trade Secrets but for the sale and transfer of the M & W assets (including the Trade Secrets) from Products to Parkinson in Rhode Island.[8] The balance of interests favors Rhode Island, and the Court will therefore apply Rhode Island law to the dispute.

---

8. Counsel for Magnum argued orally that California law might apply because various M & W employees had traveled to Magnum's offices in California, and because Magnum had disclosed some or all of its Trade Secrets during those visits. This misconstrues the conflict of law rubric. It is, as noted above, the *locus delicti* that governs the choice of law. The disclosure of confidential information, of itself, is not a tort.

### B. *Misappropriation Of Trade Secrets Under The RIUTSA*

■ Under the RIUTSA a person can misappropriate a trade secret in two ways. First, a person misappropriates a trade secret by acquiring a trade secret with the knowledge—actual or constructive—that the secret was obtained by improper means. *See* R.I. Gen. Laws § 6–41–1(2).

Second, a person misappropriates a trade secret if he *discloses or uses* the secret when he (1) used improper means to acquire knowledge of the secret; (2) knew or had reason to know that the secret had been acquired by improper means; or (3) *knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by mistake or accident. See* R.I. Gen. Laws § 6–41–1(2) (emphasis supplied).

Accepting the facts as pled, and drawing all reasonable inferences in favor of Magnum, Harbour clearly knew or had reason to know that it had received Magnum's Trade Secrets by the sale and transfer of the M & W assets. One of the assets that Harbour purchased was M & W's $600,000 counterclaim against Magnum in the California Action, whose dismissal Harbour explicitly approved. Even a cursory due diligence review of this asset would have revealed that Magnum's Trade Secrets were at the heart of the California Action.

Furthermore, the BOA and Confidentiality Agreement were attached to the complaint in the California Action. Anyone who read the Confidentiality Agreement would immediately have been on notice that Harbour was acquiring the Trade Secrets.

Moreover, the Complaint states that Harbour's subsidiary, Products, employed former M & W employees who had worked on the Magnalon Film project and were aware of the Confidentiality Agreement.[9] This knowledge reasonably can be imputed to the Company.

The Court therefore finds that the allegations undergirding Count 1 of the Complaint and the reasonable inferences to be drawn therefrom are sufficient to withstand a motion for judgment on the pleadings. The Court also finds that the Motion for Attorneys' Fees is without merit, as the Harbour Defendants are not the "prevailing party" under the RIUTSA with respect to Count 1.

### C. *Common Law Misappropriation of Trade Secrets*

■ The Harbour Defendants next contend that the RIUTSA precludes a common law misappropriation claim.[10] Specifi-

---

**9.** The Harbour Defendants purport to rely on the deposition testimony of William Willhite, a Senior Vice President and the CFO of Harbour. *See* Defendants' Memorandum, p. 13. This type of evidence, however, is more appropriately presented in a motion for summary judgment. Even so, that portion of Mr. Willhite's testimony cited by the Harbour Defendants tends to support Magnum's contentions:

> Mr. Willhite knew very little if anything about the California Action against M & W. . . . At some point during the due diligence (or at closing), he did learn that one of the "assets" of M & W was a "receivable" related to Magnum, *i.e.*, the counterclaim M & W had filed in the California Action.

*See id.* (citations omitted). At the very least, this testimony would appear to suggest that Harbour may have had *reason to know* that it was acquiring the Trade Secrets. Furthermore, the discovery taken to date in this case is by no means complete: the California District Court only permitted discovery to the extent that it was relevant to the issue of personal jurisdiction. There may well be other witnesses who possess information respecting Harbour's knowledge of the Trade Secrets at the time of the receivership asset purchase.

**10.** Count 2 seeks relief for misappropriation of Trade Secrets under California common law, but choice of law analysis, as set forth above, requires the application of Rhode Island law. The same principle applies to Counts 5 and 6, discussed *infra*.

cally, R.I. Gen. Laws § 6–41–7 provides that the RIUTSA "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret."

There is little guidance on the issue of whether the RIUTSA precludes a Rhode Island common law cause of action for misappropriation of trade secrets. This is perhaps because there is no common law claim under Rhode Island law for misappropriation of trade secrets. Clearly, this is only a statutory cause of action in Rhode Island. Therefore, judgment on the pleadings is appropriate as to Count 2 of the Complaint.[11]

### D. *Unfair Or Deceptive Business Practices*

■ There is no Rhode Island analog to California's sweeping Unfair Business Practices Act. *See* Cal. Bus. & Prof.Code § 17200. The Rhode Island Deceptive Trade Practices Act does provide a statutory cause of action for deceptive trade practices, but it limits standing to "any person who purchases or leases goods or services primarily for personal, family, or household purposes." *ERI Max Entertainment, Inc. v. Streisand,* 690 A.2d 1351, 1354 (R.I.1997) (citing R.I. Gen. Laws § 6–13.1–5.2(a)); *see Scully,* 881 F.Supp. at 745 (§ 6–13.1 does not provide a right of action for business persons or entities). Magnum, a defense contracting business making claims against other businesses, obviously does not have standing under the statute. Therefore, judgment on the pleadings is appropriate as to Count 5.

### E. *Common Law Unfair Competition*

■ For similar reasons, Count 6 of the Complaint is ripe for judgment on the pleadings. Rhode Island common law re-

quires that a putative plaintiff bringing a claim for unfair competition allege

> conduct on the part of the [defendant] that reasonably tended to confuse and mislead the general public into purchasing [its] product when the actual intent of the purchaser was to buy the product of the complainant.

*ERI Max,* 690 A.2d at 1353–54 (citing *George v. George F. Berkander, Inc.,* 92 R.I. 426, 169 A.2d 370, 371 (R.I.1961)). Magnum clearly has made insufficient allegations to support this cause of action.

### *Conclusion*

For the foregoing reasons, the court hereby ORDERS as follows:

1. Judgment on the pleadings as to Count 1 is DENIED;

2. Judgment on the pleadings as to Count 2 is GRANTED;

3. Judgment on the pleadings as to Count 5 is GRANTED; and

4. Judgment on the pleadings as to Count 6 is GRANTED.

---

11. Were it before the Court, a motion for judgment on the pleadings would appear to be equally appropriate as to Count 4 of the

Complaint for common law misappropriation of Trade Secrets against Parkinson.