SOMERS REALTY CORP., Plaintiff,

v.

William C. HARDING, Individually and as Supervisor of The Town of Somers, et al., Defendants.

No. 95 Civ. 2217 (WCC).

United States District Court, S.D. New York.

May 19, 1995.

action must be dismissed for failure to join Dri–Sox.

Lovett & Gould, White Plains, NY (Jonathan Lovett, of counsel), for plaintiff.

Maroney Ponzini & Spencer, Tarrytown, NY (Robert J. Ponzini, of counsel) and Martin, Clearwater & Bell, New York City (Michael F. Lynch, of counsel), for defendants.

### OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiff Somers Realty Corp. ("SRC") brings this action against William Harding, individually and as Supervisor of the Town of Somers, New York, and the current members of the Somers, New York Town Board (the "council members"), both individually and as town officials, for violating 42 U.S.C. § 1983.[1] On April 21, 1995, we issued an order directing defendants to show cause at a hearing on May 3, 1995 why a preliminary injunction should not be granted enjoining enforcement of an Interim Development Law (the "IDL") enacted by the Somers Town Board on April 6, 1995 pending a trial on the merits of plaintiff's claims. After reviewing the testimony and evidence presented at the two-day hearing, we deny plaintiff's request for a preliminary injunction.

### BACKGROUND

Plaintiff, a closely held New York corporation owned by Joseph and Cataldo (Al) Capozza, owns several parcels of land in and around Somers, New York. In June 1994, SRC entered into a contract for the sale and commercial development of land located in the northeast quadrant of Somers (the "SRC Tract"). In anticipation of developing the SRC Tract into a large, multi-use shopping center, in January 1995 the buyer/developer, Hampshire Realty Corp. ("HRC"), submitted a plan to the Town Board for approval.

---

1. 42 U.S.C. § 1983 provides in part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Shortly thereafter, Supervisor Harding proposed the enactment of a moratorium on Town Board consideration of development within Somers. After March 16 and April 6, 1995 hearings to address publicly the advisability of adopting the moratorium legislation, the Board voted unanimously to enact Harding's proposal, substantially embodied in the IDL. That law, made effective in mid-April 1995, places a six-month moratorium on Board consideration of applications for preliminary subdivision plat approvals, applications for site plan approvals, and applications for special exception use permits unless the Board, after receipt of the report and recommendation of the town's planning consultant, determines that any such application is consistent with the 1994 Comprehensive Master Plan of the Town of Somers (the "Master Plan"). Town of Somers, NY, Interim Development Law § III(A)(1)–(4) (April 6, 1995). In addition, the law allows the Board to modify or vary the moratorium as required to alleviate an economic or personal hardship. Any application requesting such relief (a "Hardship Appeal") is first referred to the town planning consultant to determine the effect of the variance on the Master Plan and must be finally decided by the Board within ninety days of the application. *Id.* at § IV.

Fearing that a six-month delay in the Board's consideration of HRC's proposed development will effectively scuttle HRC's development plans and permit HRC to "walk away from" the sales contract, plaintiff has filed this law suit to enjoin enforcement of the IDL and for damages associated with its enactment. Suing under section 1983, plaintiff claims that the IDL, while valid on its face, violates the First and Fourteenth Amendments of the United States Constitution, and analogous provisions of the New York State Constitution,[2] as applied to plaintiff because it was enacted primarily in retaliation for Joseph Capozza's political opposition and public statements against Harding

and Harding's wife. Moreover, plaintiff asserts that if the moratorium is not enjoined, it will lose its current contract with HRC, it will be unable to sell the SRC Tract to future developers, and its goodwill will be irreparably damaged, resulting in plaintiff's financial ruin.

**THE HEARING**

On May 3 and May 8, 1995, the Court held a hearing to determine the propriety of granting plaintiff's request for a preliminary injunction. At that hearing, plaintiff presented testimony and evidence attempting to demonstrate the retaliatory purpose behind the IDL's enactment, and the harm that plaintiff will suffer due to its enforcement. Although many witnesses testified on a variety of issues, the following facts are most important for our consideration.

First, regarding the law's unstated purpose, Joseph Capozza testified that a personal animus between him and Harding and defendant Patrick DeSena, a council member, going as far back as 1987, was the primary motive for the Board's passage of the IDL. In particular, Capozza stated that as a council member in 1987[3] he had actively sought to have Diana Harding, William Harding's wife, removed from the Somers' Conservation Advisory Council for certain improprieties while acting as chairperson of that body. In a four-to-one vote, with DeSena the lone dissenter, the Board voted against her reappointment.

Capozza also testified that several months later, when William Harding first ran for the Supervisor's office, he actively campaigned for Harding's opponent, incumbent Supervisor D. Wayne Van Tassel, and exposed misrepresentations by Harding regarding his education and business experience. Harding and DeSena struck back, accusing Capozza of having a conflict of interest between his posi-

---

**2.** In its complaint, plaintiff also claims that the IDL violates the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution, and analogous New York constitutional provisions, by allowing some development in Somers to continue while at the same time squelching plaintiff's plans. However, because plaintiff neither relied on this theory in their memorandum

of law in support of their preliminary injunction, nor presented any evidence at the injunction hearing to substantiate these claims, we decline to address it here.

**3.** Joseph Capozza was a council member from January 1, 1983 through December 31, 1987.

tion as council member and his ownership of substantial real estate holdings in the town. Although Harding won the election, in the closing days of their public tenures, Harding and Van Tassel, as part of a four-to-one vote with DeSena dissenting, voted to reduce the salary of the incoming supervisor on the stated ground that he lacked the experience of the previous supervisor.

In 1989, again Capozza actively campaigned against Harding's reelection bid and served as an advisor, campaigner, strategist and fund raiser to defendant Michael DePaoli, Harding's primary opponent. Although Harding ultimately succeeded at the general election, Capozza claims that Harding bears significant resentment toward him for his involvement in forcing Harding to run a primary campaign.

Against this backdrop, and in furtherance of the ongoing feud between the Joseph Capozza and Harding, plaintiff claims that Harding and his co-defendants have repeatedly adopted and/or proposed the adoption of legislation which targeted Capozza-owned real property holdings and impeded their development.

First, Joseph Capozza cited the Board's decision to create a new sewer district adjacent to the SRC Tract as evidence of its intent to retaliate against Capozza for his past political activity. By deliberately restricting the size of the sewer line running along side the SRC Tract, Capozza claims that the Board was attempting to inhibit his development plans.

Joseph Capozza also testified regarding two instances when Harding indicated that his effort to prevent him from developing the SRC Tract was "personal." The first occurred in 1991 after Capozza and his brother Al presented a conceptual proposal for the development of property encompassing the SRC Tract to the Town Board. At the meeting, Harding expressed his opposition to the plan, indicating that he was against the proposed land use density in that part of the town. After the meeting, Capozza claims that Harding approached him in the parking lot and asked, with a smirk, "You don't really think this is personal, do you Joe?" On another occasion, on or about March 13,

1995, Harding approached Robert Pease, town attorney for neighboring Yorktown and, referring to a copy of an advertisement placed by SRC in a number of newspapers denouncing Harding's opposition to SRC's development plans, stated, "Tell Al [Capozza] it's personal."

Finally, Joseph Capozza claims that the passage of the IDL itself was an attempt to attack both him and his business. Although the Board unanimously enacted the IDL, Capozza claimed that the other four council members were pressured by Harding into supporting the measure. He testified that defendant DePaoli specifically told him that it would be "politically unwise" for him not to support the IDL. However, DePaoli testified that he had not made such a statement.

With respect to the law's effect on plaintiff, Joseph and Al Capozza and Gregg Saunders, a principle of HRC, each testified that if enforcement of the IDL is not enjoined, HRC will seek absolution from the sales contract between it and SRC. While the damage resulting from the loss of that contract may be quantifiable, the Capozzas testified that SRC's inability to consummate its deal with HRC will impair or destroy its ability to secure future developers and effectively put it out of business. Although several defense witnesses testified that the appeal process provided for in the IDL adequately protects plaintiff's rights and defendants pointed out that the IDL did not prevent HRC from proceeding with other aspects of its development plans, a process possibly extending beyond the six-month moratorium, plaintiff argues that the IDL will effectively destroy its sales contract with HRC and lead to SRC's financial ruin.

## DISCUSSION

■ Under well-settled Second Circuit jurisprudence, to warrant preliminary injunctive relief plaintiff must establish: "it will suffer irreparable harm and either a likelihood of success on the merits or a sufficiently serious question that raises a fair ground for litigation, with the balance of hardships tipping decidedly in its favor." *Paulsen v. County of Nassau*, 925 F.2d 65, 68 (2d Cir.

1991). The "irreparable harm" and "balance of hardships" requirements have probably been met here. The evidence establishes that plaintiffs will likely suffer serious harm from the enforcement of the IDL. In contrast, defendants have presented little, if any, evidence that Somers will suffer any hardship if we were to enjoin the IDL's enforcement. However, on the critical issue as to the council members' motivation for enacting the IDL, the evidence does not raise a sufficiently serious question creating a fair ground for litigation to warrant injunctive relief.

To sustain its First and Fourteenth Amendment claims under § 1983, plaintiff must demonstrate 1) that Joseph Capozza's criticism of Harding and the Town Board is deserving of First Amendment protection, and 2) that defendants' efforts to curtail commercial development in Somers were motivated or substantially caused by Joseph Capozza's exercise of free speech. *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 58 (2d Cir.1987) (citing *Mount Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)).

■ As to the first element, plaintiff has clearly established that his public criticism of Harding and his anti-development policies is protected speech under the First Amendment. Indeed, as defendants' apparently concede, this type of public discourse lies at the heart of the amendments' intended breadth. *See McIntyre v. Ohio Elections Comm'n,* ⸺ U.S. ⸺, ⸺, 115 S.Ct. 1511, 1519, 131 L.Ed.2d 426 (1995).

■ Regarding the second *Donahue* element, when, as here, a legislative body is the source of the alleged unconstitutional conduct, the Court must examine the individual motives of the legislators in passing the law at issue. However, a long line of Supreme Court cases clearly demonstrates the limited weight that courts can ascribe to hidden legislative intent, especially when a statute is constitutional on its face. *See Goldberg v. Whitman,* 743 F.Supp. 943, 948 (D.Conn. 1990) (outlining relevant Supreme Court precedent). While judicial inquiry into motive is most restricted when reviewing legislative

enactments of a coordinate branch of government, *United States v. O'Brien,* 391 U.S. 367, 383–84, 88 S.Ct. 1673, 1682–83, 20 L.Ed.2d 672 (1968), federal courts have similarly been reluctant to second guess local lawmaker's motives. *See, e.g., F.O.P. Hobart Lodge No. 121 v. City of Hobart,* 864 F.2d 551, 554 (7th Cir.1988) (Posner, J.) (court refused to consider alleged illicit legislative motive of lame-duck city council in challenge to municipal ordinance allegedly enacted in retaliation for police officers' support of councilors' successful opponents). As Judge Posner stated, ". . . courts 'will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive.'" *Id.* (citing *O'Brien,* 391 U.S. at 383, 88 S.Ct. at 1682).

In light of this case law, at least one court has indicated that "an inquiry into legislative purpose is properly circumscribed where a court considers only *objective* evidence of intent." *Goldberg,* 743 F.Supp. at 954 (emphasis in original). Under this approach, the court would not consider testimony of the individual legislators' motivations. Instead, inquiry would be confined to the existence of a disparate impact, unexplainable on any grounds other than improper motive, an effect clearly unrelated to the statute's stated purpose, highly unusual procedures surrounding the legislation's enactment and enforcement, and a past pattern of discriminatory or censorious behavior. *Id.* at 952.

■ On the facts of this case, we need not decide whether to exclude completely subjective evidence from our consideration of the Town Board's motivations in enacting the IDL. Because the stated purpose of the law is valid, other towns have enacted similar laws for similar reasons, and plaintiff supplies little, if any, subjective evidence linking the Board's conduct to Capozza's protected speech, plaintiff has failed to substantiate a *prima facie* case that the Board curtailed Capozza's First Amendment rights. Even considering the little subjective evidence that plaintiff presents, in light of the limited weight that we give to Harding's statements allegedly evidencing his improper motives, and our lack of insight into the other council members' motivations, plaintiff has simply

not presented a serious question creating a fair ground for litigation. Therefore, their plea for a preliminary injunction must be denied.

█ In support of its injunctive request, plaintiff presents three circumstances allegedly demonstrating the Board's improper motive. First, plaintiff points to past public conflicts that Joseph Capozza has had with Harding, his wife, and the Town Board dating back to 1987, arguing that these conflicts supply the motivation for the IDL's passage. We agree with the Seventh Circuit, however, that a reason for resentment is alone insufficient to support a claim of retaliation. *Yatvin v. Madison Metropolitan School District*, 840 F.2d 412, 418 (7th Cir.1988). Instead, plaintiff must establish that the alleged improper actions were motivated by a manifested resentment.

Plaintiff has presented minimal evidence at best, apart from defendant Harding's statements discussed below, illustrating the Board's resentment for Capozza's public comments. In fact, many of the public statements that plaintiff claims motivated the Board's actions were made by Capozza in support of defendant DePaoli's campaign for supervisor. However, DePaoli, who has no reason to resent Capozza's making of those statements on his behalf, voted in favor of the IDL. Although Capozza claims that DePaoli told him that he did so because it was "politically unwise" to vote against the IDL, DePaoli denies making such a statement. Moreover, such a statement standing alone would scarcely support a claim that DePaoli, much less the Board, voted for the IDL to punish Capozza's exercise of free speech. It seems equally, if not more logical to construe DePaoli's alleged statement as meaning that he supported the IDL because he felt that there was popular support for deferring development in Somers until legislation implementing the Master Plan could be enacted. Such a "politically wise" motive would obviously not constitute a First Amendment deprivation, but merely an instance of the proper working of our representative form of government. Plaintiff's characterization of DePaoli's alleged statement as an affirmation of Harding's alleged malice toward Capozza is simply insufficient to establish an illicit legislative intent.

Similarly, DeSena's personal attack on Capozza during Harding's 1987 campaign bears little relation to the Board's legislative actions in 1995. While DeSena may indeed dislike Capozza for his aggressive campaigning, plaintiff has presented no proof that his personal animus substantially motivated the Board's vote on April 6, 1995.

Second, pointing to the Board's creation of a new sewer district adjacent to the SRC Tract, plaintiff argues that past legislative actions by the Board also demonstrate its retaliatory intentions. However, plaintiff offers no proof, other than its belief, that the new sewer line in fact adversely affects the proposed development, that the Board was apprised of that effect, and, most importantly, that the law was enacted substantially because of that effect in retaliation against Capozza's protected speech. We do not feel that plaintiff's belief that the Board acted improperly in that matter is sufficient to raise a fair question for litigation regarding the Board's motives in passing the IDL.

Finally, plaintiff points to Harding's two statements indicating that his opposition to SRC's development plans is "personal" as evidence of the Board's motives. If Harding had been the sole legislative actor in Somers, we might reasonably find that plaintiff has raised a serious question that the passage of the IDL implicates Capozza's First Amendment rights. In the current context, however, plaintiff fails to meet their burden for at least two reasons.

First, the Board voted five to zero to enact the IDL. Even if Harding was motivated by personal animus toward Capozza for his past public statements, plaintiff offers no evidence that the other four council members were similarly motivated, or even that a simple majority of them were so motivated.[4] Again,

---

4. Neither plaintiff nor defendants discuss whether evidence establishing the improper motivation of some, a majority, or all of the Board in enacting the IDL is necessary to establish a First Amendment violation. We need not decide this question because plaintiff has failed to establish that any of the council members were improperly motivated. Although plaintiff has raised some

we emphasize that DePaoli, who clearly bears no resentment for Capozza's past political activities, also voted to adopt the measure.

Second, and more importantly, plaintiff supplies no evidence to connect the Board's conduct to Capozza's speech. The stated purpose of the moratorium is to allow the Board time enact legislation to implement the 1994 Master Plan. Town of Somers, NY, Interim Development Law § II. Even if the unstated motivation of the council members was to curtail commercial development in Somers, such a motivation does not offend the Constitution. Only if plaintiff offers proof that the motivation stems from Capozza's past political opposition and/or public criticism can plaintiff substantiate its First Amendment charges.

In addition, although plaintiff presents evidence of Harding's historic anti-development stance, it offers little evidence that Harding's "personal" bias against Capozza stems not from his historical stance but from his resentment of Capozza's past personal criticisms. Absent such evidence implicating Harding and at least a majority of the Board, plaintiff has failed to raise a fair ground for litigation and its request for a preliminary injunction must be denied.

We realize that plaintiff is put in the nearly impossible position of proving legislative intent based on the vague statements of one member of a law-making body. Moreover, we do not doubt plaintiff's contention that the IDL could render its property holdings significantly less valuable. Granting an injunction is not a matter that we can take lightly, however. Even though the injunction requested would seemingly pose little hardship to the Town Board or its members, our discretion is tempered by the fact that after significant public debate, a duly elected legislative body has voted for a measure presumably in the interest of the citizens of Somers—a measure similar to those that have been adopted by other communities in simi-

lar circumstances and upheld by the courts. *See Noghrey v. Acampora*, 152 A.D.2d 660, 543 N.Y.S.2d 530, 530 (N.Y.App.Div.1989) (upholding facial validity of similar moratorium enacted by the Town of Brookhaven, NY). We are also mindful that in the context of local politics, the "personal" nature of legislation is a weapon in the arsenal of every opposing entity. As Judge Posner indicated in *F.O.P. Lodge:*

> [Invalidating all legislation that adversely affects a political outsider] would put at hazard a vast amount of routine legislation—federal, state, and local. Legislation passed by lame-duck legislatures, legislation passed by newly elected legislators— all would be subject to invalidation by a federal court upon evidence that the legislation, though on its face concerned only with the most ordinary matters of governmental administration, had actually been intended to punish the legislators' political opponents....

*F.O.P. Lodge*, 864 F.2d at 555. While we do not go so far as to hold that no plaintiff could ever establish a First Amendment violation by demonstrating illicit legislative intent, here plaintiff has not presented a sufficiently cognizable federal claim to warrant marshalling the injunctive power of this Court. Absent more definitive proof of improper motive, we must deny plaintiff's request.[5]

## CONCLUSION

Because plaintiff has failed to raise a sufficiently serious question that the Somers's Town Board enacted the IDL in retaliation against Capozza's past protected speech, we deny its request for a preliminary injunction.

### SO ORDERED.

---

questions surrounding Harding's motivations, this evidence is ultimately insufficient to sustain a First Amendment claim and therefore cannot support the granting of a preliminary injunction.

**5.** Because we find that plaintiff has not presented a serious question raising a fair ground for litigation, we do not address whether plaintiff was irreparably harmed or whether the balance of hardships weighs in its favor.