**VISION CHURCH, United Methodist, Plaintiff,**

v.

**VILLAGE OF LONG GROVE, Defendant.**

No. 03 C 5761.

United States District Court, N.D. Illinois, Eastern Division.

Feb. 3, 2005.

**324**

Richard S. Bell, Mauck & Baker, Chicago, IL, John W. Mauck, Mauck & Baker, Chicago, IL, Andy Robert Norman, Mauck & Baker, Chicago, IL, for plaintiff.

Victor P. Filippini, Jr., Holland & Knight LLC, Chicago, IL, Basileios John Foutris, Knight, Hoppe, Kurnik & Knight LLC, Des Plaines, IL, Adam M. Kingsley, Holland & Knight LLC, Chicago, IL, William W. Kurnik, Knight, Hoppe, Kurnik & Knight LLC, Des Plaines, IL, James T. Mueller, Holland & Knight LLC, Chicago, IL, Donald G. Mulack, Holland & Knight LLC, Chicago, IL, for defendant.

## OPINION AND ORDER

NORGLE, District Judge.

Before the court are Defendant Village of Long Grove's Motion to Quash or for Protective Order, and Plaintiff Vision Church's Motion to Compel the Production of Witnesses for Deposition. For the following reasons, the Village of Long Grove's Motion is granted, and Vision Church's Motion is denied, until the court has fully examined the issue of whether the Village of Long Grove's actions in this case violate the United States Constitution.

### I. INTRODUCTION

#### A. Facts

Plaintiff Vision Church ("Vision") is a congregation within the larger United Methodist Church. Vision is comprised primarily of Korean–Americans. Defendant Village of Long Grove ("Long Grove" or "the Village") is an Illinois municipality located in Lake County, Illinois. During September 2000, Vision purchased a plot of land at the intersection of Gilmer and North Krueger Roads in unincorporated Lake County ("the Property"). Vision intended to build a church there. Vision submitted an application to Long Grove for the annexation of the Property, rezoning of the Property to "R2 Residence District," and a "special use permit" for the proposed church. After what Vision describes as "contentious" public hearings on the matter before the Long Grove Plan Commission, Long Grove rejected Vision's application.

Vision then requested that Lake County approve Vision's plans. Vision asserts that Lake County was willing to approve the proposed church, but, before Lake County could do so, Long Grove involuntarily annexed the Property. Long Grove did this, Vision asserts, by quickly approving the annexation of land immediately to the south of the Property. This annexation resulted in the Property being completely surrounded by Long Grove, making the Property subject to involuntary annexation under 65 ILL. COMP. STAT. 5/7–1–13. The Long Grove Board of Trustees ("Board") then passed Ordinance 2001–O–32, involuntarily annexing the Property. Vision

asserts that the Board then passed a new Village ordinance (Ordinance 2002–O–9) that provided that a church could only be built on property greater than twenty acres in size if that property fronted a state highway. The Property is greater than twenty acres in size, and does not front a state highway. The combination of the involuntary annexation and Ordinance 2002–O–9, Vision asserts, effectively prohibits Vision from building its proposed church on the Property. In addition, Vision asserts, since there is no other suitable property available in Long Grove, Long Grove's actions completely prohibit Vision from building its proposed church in the Village.

## B. Procedural History

Vision has filed an eleven count Amended Complaint in the United States District Court, alleging that Long Grove has violated the First and Fourteenth Amendments, and the Religious Land Use and Institutionalized Persons Act (42 U.S.C. § 2000cc(a)(1)).[1] Vision requests that the court, *inter alia*, enjoin Long Grove from preventing Vision from building its church, and award Vision $10,000,000 in damages.

On December 3, 2004, Vision gave notice to Long Grove that Vision would depose eight Long Grove Village officials. Among the matters to be inquired into were, *inter alia*, Long Grove's "rationale" for enacting Ordinance 2002–O–9, and the manner in which Long Grove determines how property in Long Grove may or may not be used for religious purposes. Presently before the court are Long Grove's Motion to Quash these depositions, and Vision's Motion to Compel the Production of Witnesses for these depositions. Vision asserts that these depositions are necessary to assist it in discovering evidence admissible at trial. Long Grove replies that these depositions are an improper attempt to discover the motives of Village officials in enacting the Ordinances in question.

## II. DISCUSSION

### A. Standard of Decision

#### 1. "Illicit legislative motive" irrelevant where government actions are constitutionally valid

■ Courts generally decline to inquire into the motives or intentions of legislators when examining the constitutional validity of government action. "[C]ourts insist ... that the actual intent or motive of the government decision makers is irrelevant to their inquiry." Alan E. Brownstein, *Illicit Legislative Motive in the Municipal Land Use Regulation Process,* 57 CIN. L. REV. 1, 1(1988). Deference to the legislative branch of government, difficulties in ascertaining or proving legislative motivations, and the futility of inquiring into legislative motives are all cited by courts as "reasons why inquiries into motive are considered problematic and troublesome." *Id.* at 8. The United States Supreme Court, for example, in *United States v. O'Brien,* asserted that "this Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive." 391 U.S. 367, 383, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). Justice Scalia, in a concurring opinion in *Church of Lukumi Babalu Aye v. City of Hialeah,* cautioned that "it is virtually impossible to determine the singular 'motive' of a collective legislative body ...." 508 U.S. 520, 558, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993).

The Seventh Circuit has followed the general judicial trend of shying away from issues of legislative motive. "The actual motives of those who enacted the ordinance are irrelevant to our First Amendment analysis." *DiMa Corp. v. Town of Hallie,* 185 F.3d 823, 828 (7th Cir.1999). Judge Kanne, in *Grossbaum v. Indianapolis–Marion County Bldg. Auth.,* articulated a number of reasons explaining this trend. 100 F.3d 1287, 1293 (7th Cir.1996) (the Constitution "makes no mention of governmental *mentes reae* (i.e. guilty minds);" it is the laws themselves that matter, not "the intentions of legislators;" governmental actions may be taken for any

---

1. Vision has chosen to challenge Long Grove's actions in the Federal Court system, rather than in Illinois State court, even though Long Grove's involuntary annexation of the Property was done pursuant to Illinois law.

number of complex and difficult to discern reasons). In addition, "respect for the political process and [ ] simple comity between departments of government" makes the Seventh Circuit reluctant to analyze the motives of legislators. *Fraternal Order of Police v. Hobart*, 864 F.2d 551, 554 (7th Cir.1988). Rather than focusing on the motives behind purportedly unconstitutional government action, the real inquiry ought to be into whether the challenged action or legislation itself is constitutionally valid. *See DiMa*, 185 F.3d at 829.

For the above stated reasons, the court takes as its starting point the principle that it ought not, generally speaking, facilitate inquiries into the motivations of legislators. The initial question for the court is therefore whether the challenged government action in this case is consistent with the United States Constitution. This general principle, however, is not fully dispositive of the matter presently before the court.

### 2. *Legislative motive relevant in Equal Protection claims*

The general principle stated above has been qualified by the Supreme Court and the Seventh Circuit. In cases where legislation "single[s] out or targets particular individuals or groups," and is challenged as "discriminating on invidious grounds such as race, religion, and sex," this principle does not apply. *Fraternal Order of Police*, 864 F.2d at 554. "In Equal Protection Clause analysis ... courts often must inquire into the motives of legislators or other government actors." *Grossbaum*, 100 F.3d at 1292; *see also Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265–66, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977) (proof of "discriminatory intent or purpose is required to show a violation of the Equal Protection Clause").

### B. Long Grove's Motion to Quash the Proposed Depositions, and Vision Church's Motion to Compel Witnesses for the Proposed Depositions

### 1. *Long Grove's ordinances are facially valid*

■ Vision challenges Long Grove's involuntary annexation of the Property under Or-dinance 2001–O–32, and Long Grove's application of Ordinance 2002–O–9. Vision does not assert that either Ordinance on its face is unconstitutional. Moreover, such an argument would be difficult to successfully make. *See United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) ("A facial challenge to a Legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid.") Vision cannot show that there are no circumstances under which an involuntary annexation pursuant to 65 ILL. COMP. STAT. 5/7–1–13 would be valid. Annexations of land under this statute are routine matters that have been upheld with regularity by Illinois courts, as long as the statutory conditions are met, and the annexing municipality follows the proper procedures. *See People ex. rel. Universal Oil Products Co. v. Village of Lyons*, 400 Ill. 82, 79 N.E.2d 33 (1948); *Village of Mundelein v. Village of Long Grove*, 219 Ill.App.3d 853, 162 Ill.Dec. 636, 580 N.E.2d 599 (1991). Vision also cannot show that Ordinance 2002–O–9 is facially invalid. That Ordinance on its face is a routine amendment to the Village Code, providing that property used for certain "Public Assemblies" conform to, *inter alia*, various location, acreage, frontage, square footage, and parking requirements. LONG GROVE, ILL., ORDINANCE 2002–O–9. Long Grove's involuntary annexation of the Property, and its enaction of Ordinance 2002–O–9, are therefore facially valid.

### 2. *Long Grove's ordinances as applied to Vision may violate the United States Constitution*

Although Long Grove's Ordinances are facially valid, laws valid on their face may still violate the Constitution in their application. In the seminal case of *Yick Wo v. Hopkins*, Justice Matthews wrote,

> Though the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the

denial of equal justice is still within the prohibition of the Constitution.

118 U.S. 356, 373–74, 6 S.Ct. 1064, 30 L.Ed. 220 (1886).

■ Vision asserts that the manner in which Long Grove has applied its Ordinances to Vision has resulted in Vision being treated differently than other similarly situated entities in Long Grove, and that Long Grove has no rational basis to explain this different treatment. Amended Compl., ¶¶ 28–32. Put another way, Vision's assertion is that it is a "class of one" whose Equal Protection rights under the United States Constitution have been violated. Such claims have been recognized as legitimate by the Supreme Court and the Seventh Circuit, under certain circumstances. *See Lunini, Jr. v. Grayeb*, 395 F.3d 761, 771 (7th Cir.2005) ("[T]he Supreme Court ... declar[ed] that class of one equal protection claims are valid where 'the plaintiff alleges that she has been intentionally treated differently than others similarly situated and that there is no rational basis for the difference in treatment.'") (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000)). To establish a prima facie case of "class of one" discrimination, Vision must "present evidence that [Long Grove] deliberately sought to deprive [Vision] of the equal protection of the laws for reasons of a personal nature unrelated to the duties of [Long Grove's] position." *Hilton v. City of Wheeling*, 209 F.3d 1005, 1008 (7th Cir.2000).

The court notes, however, that this case may prove to be nothing more than a routine zoning matter. Municipal decisions regarding zoning do not often violate the United States Constitution. *See Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976) (upholding a Detroit zoning ordinance that restricted the location of adult movie theaters). Moreover, municipal decisions regarding land use rarely please every interested party, yet municipalities are afforded great constitutional leeway in determining how land within municipal boundaries may be used. *See Mercier v. Fraternal Order of Eagles*, 395 F.3d 693 (7th Cir.2005) (holding that the sale of municipal land to a private group which intended to use

that land for religious purposes did not violate the Establishment Clause).

### 3. Long Grove's motion is temporarily granted, and Vision's motion is temporarily denied

■ Until the court has had a chance to more fully examine the issue of whether Long Grove's actions are consistent with the Constitution, the court declines the invitation to compel depositions of Long Grove city officials. Vision has made serious allegations that Long Grove has engaged in discriminatory actions in violation of the Constitution, and the court needs time to evaluate the merits of these allegations. *See Lunini*, 395 F.3d at 772 ("[T]he precise contours of class of one equal protection rights continue to elude some of this circuit's most capable judges."); *see also Bell v. Duperrault*, 367 F.3d 703, 709 (7th Cir.2004) (Posner, J., concurring) (commenting on the "lack of clarity" in the current state of class of one Equal Protection claims). The court is mindful of the general principle that courts are reluctant to inquire into legislative motives. *See, e.g., Grossbaum*, 100 F.3d at 1292. However, the court also acknowledges that legislative motives are relevant in Equal Protection cases. *See, e.g., Arlington Heights*, 429 U.S. at 265–66, 97 S.Ct. 555. The court therefore will not compel the proposed depositions at this time, but may do so in its discretion at some future date.

### III. CONCLUSION

For the foregoing reasons, the Village of Long Grove's Motion to Quash the proposed depositions is granted, and Vision Church's Motion to Compel the proposed depositions is denied, until the court has fully examined the issue of whether the Village of Long Grove's actions violate the United States Constitution.

IT IS SO ORDERED.